

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4489

Re: (a) Does Section 9, Article XV,
House Bill No. 8, Regular Session,
47th Legislature, constitute an
appropriation for the refund of
money spent for stamps erroneously
affixed to any book, share certi-
ficate or bill or memorandum of
sale of shares of stock?

(b) If so, are the appropriated
funds to be deducted from the reve-
nues collected under said Article
before the transfer and allocation
thereof to the special funds provid-
ed in Article XX of said Act?

Your letter of March 6, 1942, submits for our opinion
the following question, which we quote therefrom:

"Does Section 9 of Article XV of House Bill
No. 8, Regular Session of the Forty-seventh Leg-
islature, make an appropriation for the refund of
money spent for stamps erroneously affixed to any
book, certificate, or bill, or memorandum of sale?
If so, are the appropriated funds to be deducted
from the revenues collected under said Article be-
fore the allocations are made of the funds collect-
ed thereunder, as provided for in Article XX?"

Section 9 of Article XV of the above cited Act provides
as follows:

"If any stamp or stamps shall have been er-
roneously affixed to any book, certificate, or bill
or memorandum of sale, the Comptroller may, upon
presentation of a claim for the amount of such

stamp or stamps was or were so erroneously affixed
so as to cause loss to the person or persons making
claim, pay such amount or such part thereof as he
may allow, to such claimant out of any monies col-
lected under this Article. Such claim shall be pre-
sented to the Comptroller in writing, duly verified,
and shall state the full name and address of the
claimant, the date of such erroneous affixing, the
face value of such stamp or stamps and shall des-
cribe the instrument to which the stamp or stamps
were affixed and contain such evidence as may be
available upon which the demand for such refund is
based. Such claim shall be presented within ninety
(90) days after such erroneous affixing. The
Comptroller is hereby authorized to prescribe the
form of proof of such claim and if he finds that
such claim is just and that such stamps have been
erroneously affixed, he shall within sixty (60)
days issue a warrant or warrants for the amount
claimed and allowed by him. If the Comptroller
rejects such claim or any part thereof the claim-
ant is hereby authorized to file suit in a court of
appropriate jurisdiction in the County of Travis
against the Comptroller as defendant for the pur-
pose of determining the amount of such claim.
Such suit shall be filed within ninety (90) days
from the date on which such claim shall have been
rejected by the Comptroller. After final adjudica-
tion of the amount of such claim the Comptroller is
hereby authorized to draw a warrant or warrants in
payment of same. All such warrents for refunds
under the provisions hereof shall be written and
signed by the Comptroller, countersigned by the
State Treasurer, and shall be paid only out of the
funds collected hereunder." (Emphasis ours)

In order for an appropriation by the Legislature to
be valid and constitutional, it must conform to the following
provisions of Article 8, Section 6, Constitution of Texas:

"No money shall be drawn from the Treasury
but in pursuance of specific appropriations made
by law; nor shall any appropriation of money be
made for a longer term than two years, except by

the first Legislature to assemble under this Constitution, which may make the necessary appropriations to carry on the government until the assemblage of the sixteenth Legislature."

The above constitutional requirement that money may be drawn from the State Treasury only under "specific appropriations made by law" has been held to be satisfied by a particularity in specification of the purpose for which the appropriated funds are to be used, even though the maximum amount which may be so drawn, or, in fact, any definite amount in dollars and cents, is not stated. Atkins v. State Highway Department, 201 S. W. 226, Attorney General's Opinion No. 0-1276.

Moreover, it has been determined that it is not necessary to constitute an appropriation of monies from the Treasury of the State, that the Legislature employ the term "appropriate" or the words "there is hereby appropriated" or similar verbiage. As stated at 38 Texas Jurisprudence, page 844:

"Under the Constitution no money shall be drawn from the treasury but in pursuance of specific appropriations made by law - a prohibition that may not be ignored or evaded. The appropriation need not, however, be made in the general appropriation bill, nor is any particular form of words required. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made."

We are of the opinion that the above quoted section of the Stock Transfer Tax Act is and constitutes a valid and effective appropriation under the pertinent constitutional provision and the authorities construing same, despite the generality of the language and the fact that no definite amount, either in dollars or cents or even in percentages of collections under the Act, is therein specified. The underscored portions of Section 9 of the Stock Transfer Tax Act, clearly indicate a Legislative intent to appropriate out of the stock transfer taxes collected thereunder, such amounts of money as is necessary to refund, upon claims properly and timely presented and verified, taxes mistakenly paid to you and you may proceed to honor such claims under the authority thereof.

Considering the second phase of your question, we are of the opinion that funds in an amount necessary and sufficient to pay off and discharge these transfer tax refund claims established before you or in a court of competent jurisdiction, as provided by the Act, are and become appropriated for this specific purpose immediately upon receipt of such transfer tax collections and prior to the allocation, transfer and credit thereof to the various constitutional and statutory funds referred to in Section 2 of Article XX, House Bill No. 8, Regular Session, 47th Legislature.

Under the section referred to, all of the revenues derived and collected under Article XV (among others) of said Act, "after deduction of that portion provided for enforcement purposes," shall be allocated to the Available School Fund in the State Treasury to the extent of one-fourth of the total collections, the remaining three-fourths to be deposited in a Clearance Fund in the Treasury for transfer, allocation and credit in stated amounts, to the several special social security funds such as the "Blind Assistance Fund," the "Children's Assistance Fund," the "Teacher Retirement System," and the "Old Age Assistance Fund," the balance, if any, remaining in the Clearance Fund to be paid into the General Revenue Fund of the State of Texas. There being no special fund created in the State Treasury for the honoring of refund claims under this Act, and you, as Comptroller, being expressly enjoined and directed to pay these claims "out of any moneys collected under this Article" and to execute and issue warrants for such refunds which "shall be paid only out of the funds collected hereunder," we think it is clearly contemplated that the appropriation for this purpose is from the tax funds and revenues, as and when collected under the Act, and prior to their transfer to the various designated funds, from which no withdrawal is allowed except for the purposes of such fund.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
          Pat M. Neff, Jr
              Assistant

PMN:db

